W. C. PYLE, Administrator, Appellee, v. W. R. EAST, et al., Appellants.

CONTRACTS:    Construction—Different Writings as One Transac-
1    action—Provision for Nullifying Debt—Bills and Notes.    All the writings executed and delivered at the very time of the final consummation of an agreement and relating thereto must be presumed to constitute one inseparable transaction,—an entirety,— and from *all* such writings, the actual intent, purpose and agreement must be deduced.    So *held* where the payee, on the execution of a note, signed an indorsement on the note, as to the cancellation of the note after payee's death.

PRINCIPLE APPLIED:    One Morris had no direct heirs.    He sold a tract of land to East, his nephew, who, in the consummation of the deal, and for part of the purchase price, executed his note for $1,000 to Morris.    At that time, the following indorsement was, at the direction of Morris, written upon the back of the note by a third party, who drew all the papers, and Morris signed the same, to wit:    "This note is to be void and to become the property of W. R. East at the death of the undersigned."    Morris then gave the note to the third party, with directions that the third party collect the annual interest and pay the same to him (Morris) as long as he lived, and turn the note over to East after he (Morris) died.    After the death of Morris, his administrator sought to collect the note.    *Held*, the note must not be viewed separate and apart from the indorsement—that the indorsement must be construed as embodying one of the conditions of the sale.

GIFTS:    Delivery—Acts Constituting Delivery—Enjoyment Post-
2    poned Until Death of Donor.    A consummated gift (in so far as change of title is concerned), with enjoyment postponed, results from the voluntary, gratuitous turning over of personal property to another person, with unqualified direction to such other person to collect the income arising from such property and to pay the same to the donor during the lifetime of the donor, and to deliver the principal of the property so originally turned over to a third person, on the death of the donor, without reservation of power in any manner to recall such arrangement.

*Appeal from Hamilton District Court.*—C. E. ALBROOK, Judge.

THURSDAY, DECEMBER 16, 1915.

ACTION at law upon a promissory note made by the

defendants in the lifetime of the intestate.    There was a
judgment for plaintiff, and defendants appeal.—*Reversed*.

*W. J. Covil*, for appellants.

*Wesley Martin*, for appellee.

WEAVER, J.—The defendants admit the making of the
note in suit, but allege that, at the time of its execution, and
as a part of the same transaction, the payees therein named
endorsed and signed upon the back of said instrument an
agreement as follows: "This note is to be void and to become
the property of W. R. East at the death of the undersigned.
(Signed) Michael Morris and witnessed by J. E. Sogard."
They further allege that, at the time of making said note and
the endorsement thereon, said instrument was, by agreement
of parties, placed in the hands of a third person, J. E. Sogard,
to hold and collect the interest thereon during the lifetime of
the payee, and then to surrender or deliver it to East; that
Sogard did in fact receive and hold the note during all the
remainder of the lifetime of Morris, and then offered to
turn it over to East; but the latter, to avoid any ground for
criticism, suggested that it would be better to let the delivery
be made through the court or administrator.  For the reasons
stated, the defendants deny plaintiff's right to maintain
the action.  Jury being waived, the issues were tried to the
court, which found for the plaintiff.

The record indicates that Morris, who was the uncle
of East, had no direct heirs.  At the date of the note, he sold
a tract of land to his nephew, and the note in suit repre-
sents a part of the purchase price.  The papers in that
transaction were drawn by the witness Sogard, a banker in
that neighborhood, who, at the time, and at the request of
Morris, wrote and witnessed the endorsement which we have
above quoted.  Morris then deposited with Sogard the note
so endorsed, directing him to turn it over to East, at his
(Morris') death, and saying, at the same time, "that the

income should go to him as long as he lived, and when he was dead, it should be turned over to East.'' This testimony is in no manner disputed. The conclusion reached by the trial court appears to have been that the transaction witnessed by the endorsement on the note and by the testimony of Sogard shows no more than an imperfect attempt at testamentary disposition of property, or at best an incomplete gift by Morris to East, which never was consummated by delivery, and that, no title to the subject of the gift having passed to East in the lifetime of Morris, the note became, at the death of the latter, a part of the assets of his estate. In support of this theory, the court, in a written memorandum of its views, cites the following cases: *Crispin v. Winkelman,* 57 Iowa, 523, 524; *Schollmier v. Schoendelen,* 78 Iowa, 426; *Furenes v. Eide,* 109 Iowa, 511; and *In re Brown's Estate,* 113 Iowa, 351. We have examined each of these cases, as well as the citations therein made, and think they do not sustain the view of the trial court. The *Crispin* case involved a claim by the father of the deceased that the son, before his death, had authorized the father to use so much of his property or estate as might be necessary to pay the debts of the deceased, and apply the remainder to the support of his children. This claim was contested by the son's administrator, and the court held that the agreement on which the father relied was testamentary in character and, not being executed according to the law of wills, was void—a decision the correctness of which can be conceded. It does not, however, rule this case, in fact or in principle. The father there made no claim that the title had passed in the lifetime of the son, or that there had been any completed gift to him or to the children of the deceased. The court expressly says, ''The defendant does not claim that the property passed to the children except as heirs. Prior to the decedent's death, defendant, upon his own theory, was trustee of the property for the decedent. His trusteeship for the heirs commenced, if at all, with their inheritance. But to hold that it commenced

then would be giving testamentary force to the agreement, which is not allowable.'' The court does, however, hold and say—and this holding is in harmony, with the claim of appellant in this case—that if the deceased had given the property in such a way that the title thereto had passed in his lifetime to the children, or to his father as trustee for their benefit, then the law would uphold it. The *Schollmier* case sustains the validity of a gift of a bank deposit, made by writing in the donor's bank book: ''Pay to the order of Elizabeth Schoendelen and Dorothea Hasenmiller all within deposit after my decease.'' There was some evidence that the book was in the possession of one of the defendants at some time before the donor's death. Referring to the defense that her gift was of a testamentary character, the court says:

''In our opinion, the proper effect to be given the assignment must depend upon the intent of the decedent with respect to it. In terms, it is a full assignment of the amount shown by the book to be due at the time it was made—not of the amount which should be due at the death of the assignor. No right to rescind or revoke it is shown to be reserved; and if it was treated by the assignor as a completed transaction, we think it passed a present interest in the bank account, and is not vulnerable to the objection made by plaintiff.''

The court further held that the direction in the writing to make the payment after her death ''related to the time when the interest transferred might be enjoyed, and not to its transfer.'' It is also there said that, if the book was delivered in the donor's lifetime, or if the assignment was delivered or ''in any other manner given effect'', then the title could be said to have passed. As we shall later see, the deposit of the note in this case in the hands of Sogard was in legal effect a delivery, sufficient to validate the transaction. The *Furenes* case relates to the alleged conveyance of land by three separate deeds to the grantor's grandchildren. These deeds were handed to a third person to be delivered, nothing being said about a delivery after the death of the grantor. One deed

was delivered at once, while the other two were not delivered until after the grantor had died. The first deed was held to constitute a good conveyance, while the other two were of no effect, for want of delivery in the grantor's lifetime. That case in no manner controls the one at bar, where the delivery was in fact made to a third person, upon the express condition that the person so receiving it should surrender it to the defendant after the death of Morris. The court, in the cited authority, expressly distinguishes the case then before it from those where a third party taking the papers may be considered as acting for the grantee, as well as where the papers are placed in the hands of a third person, to be delivered after the grantor's death. So also in *Brown's* case, the court again expressly recognized the principle that, where a present delivery is intended, or the instrument is left with a third party, without reservation or right of recall, a present interest passes to the donee or grantee.

The additional precedents cited by counsel for appellee in this court are principally those announcing the rule that a mere gift which is testamentary in character will not be recognized or given effect by the courts unless it be made in writing and executed after the manner prescribed by statute for the execution of wills. Of the soundness of the proposition so relied upon, there can be no question; and if the transaction in the case at bar, witnessed by the endorsement on the note and the deposit of the paper with Sogard, is no more than a mere undertaking to make a gift, which should take effect only upon the death of Morris, then the judgment below is right, and should be affirmed. But it is our opinion that the undisputed facts demonstrate that this is not a case of testamentary disposition of property and that, under rules of law well established in this and other courts, the defendants have established a good defense.

In the first place, it does not seem to be necessary to the defense to show that a mere gift was intended. It appears

in evidence that the note was given and this transaction had in the course of settlement for the purchase price of land sold by Morris to East, and that, in making such settlement, Sogard, who made the papers, was directed by Morris to prepare the endorsement, which was then and there signed. The defendant, as a party to the transaction, was not a competent witness thereto against the administrator of Morris' estate, and we know nothing of the terms and conditions agreed upon between defendant and deceased, except as already indicated. Why, then, are we not bound to presume that the release or discharge of the principal sum of $1,000, subject only to the payment of interest to Morris during his lifetime, was one of the terms or conditions of the sale? Certainly, there is nothing shown to contradict that conclusion, while the fact that such provision was put into writing and endorsed upon the note given in consummation of the contract of sale, at the very time it was made, affords very satisfactory evidence in support of it. The writing also imports a consideration for the agreement.

1. CONTRACTS: construction: different writings as one transaction: provision for nullifying debt: bills and notes.

In the next place, even if we proceed upon the theory that there was nothing in the terms of the sale of the land requiring Morris to do as he did with reference to this note, and that it was a voluntary act, prompted by his desire to favor or show his good will to his nephew, the facts shown require us to hold that the transaction effected a change of title in the subject of the gift, and that the note is not an assset in the hands of the administrator of Morris' estate. The fact that Morris placed the note in Sogard's hands for the benefit of East, and retained to himself no interest therein or control thereof, except to demand and receive the interest, is sufficiently established. Sogard says:

2. GIFTS: delivery: acts constituting delivery: enjoyment postponed until death of donor.

"He said this was to go to East on his death. . . . Morris told me to turn that over to East on his death. He said the interest was to go to him as long as he lived,—that

the income should go to him as long as he lived,—and when he was dead, it should be turned over to East.·   .   .   .    He said it would be the best place to leave it, at the bank; to leave it at the bank in a third party's hands, the bank to be considered a third party.''

·The note was in fact so left, and was never withdrawn or demanded by Morris, though he lived for several years thereafter.

We have held that postponement of the delivery and enjoyment of a gift does not necessarily prevent the passing of a present interest, even though possession by the donee is not obtained till after the donor's death. *Schollmier v. Schoendelen*, 78 Iowa 426; *Hogan v. Sullivan*, 114 Iowa 456, 460; *Abegg v. Hirst*, 144 Iowa 196, 198. That a delivery to a third person for the benefit of another, the property to be retained by such third person until the death of the person so delivering it, and then to be passed over to the beneficiary, is a sufficient delivery has frequently been decided. *Larimer v. Beardsley*, 130 Iowa 706; *Hogan v. Sullivan, supra; King v. Smith*, 110 Fed., 95; *Mollison v. Rittgers*, 140 Iowa, 365; *White v. Watts*, 118 Iowa, 549; *Tucker v. Tucker*, 138 Iowa, 344, 349; *Podjhasky's Estate*, 137 Iowa 743; *Jones v. Nicholas*, 151 Iowa 362; *Grymes v. Hone*, 49 N. Y., 17. And a gift may be so made that the grantor shall retain the use during life. *In re Klehr's Will*, 147 Wis. ·653; *Tucker v. Tucker*, 138 Iowa 344; *McNally v. McAndrew*, 98 Wis. 62; *Martin v. Martin*, 170 Ill. 18; *Innes v. Potter*, (Minn.) 153 N. W. 604. The gift may be in the nature of a forgiveness or a release of a debt due from the donee to the donor, subject to payment of interest during the life of the donor, and a delivery of the note or evidence of debt to a third person, to be surrendered upon the death of the donor, is sufficient to complete the gift. See, as directly in point, *Hagerman v. Wigent*, 108 Mich. 192. See also *Stewart v. Hidden*, 13 Minn. 43. Even where there is a right to revoke a deposit which has been made with a third person for delivery to the beneficiary after the death of

the depositor, it has often been held that, if such right of revocation has never been exercised, it does not affect the beneficiary's title. *Blanchard v. Sheldon*, 43 Vt. 512; *Grymes v. Hone*, 49 N. Y. 17; *Worth v. Case*, 42 N. Y. 362; *Belden v. Carter*, 4 Day (Conn.) 66; *Giddings v. Giddings*, 51 Vt. 227.

Whether we would be willing to go to the full extent of some of these cases, we do not here say, for it is unnecessary in disposing of this appeal; but the precedents are of value, as illustrating the strong tendency of the courts to look into the actual intent of the parties to any lawful contract or undertaking and give effect thereto, whenever it can be done without overriding well established rules. The intent of Morris to surrender or relinquish' to East the right to enforce payment of the principal sum named in the note, but to retain in himself the right to demand and receive the interest thereon during his lifetime, is clear. The intent was lawful. The delivery of the note to Sogard operated to carry that intent into execution, so far as it could be done, yet to protect Morris in his right to collect the interest. Nothing was postponed except the right of East to demand and receive a surrender of the paper upon the death of Morris. In the matter of a conveyance of real estate, where the deed is deposited with a third person, to be delivered after the grantor's death, we have held it equivalent to the present delivery to the grantee of a conveyance which, by its terms, reserves a life estate to the grantor. *White v. Watts, supra.* If this be true, there would seem to be equally good reason for saying that the making of the quoted endorsement upon the note, and its deposit with Sogard, to be delivered after the death of the payee, was a present gift to East of the principal sum of one thousand dollars, with reservation of the interest, or use thereof, during life. This remark is, of course, applicable only upon the theory that proof of a gift is necessary to sustain the defense in this case. But, for reasons already stated, we think the defense is not thus restricted. The Supreme Court of Minnesota, passing upon a state of facts

closely parallel with those in the case at bar, has announced a holding in accordance with the conclusions reached herein. See *Innes v. Potter,* (Minn.) 153 N. W. 604.

The court below laid some stress upon the fact that, after the death of Morris, when Sogard handed the note to East, he handed it back, with the suggestion that he did not wish to do anything which might cast suspicion upon him, and he preferred to have the paper surrendered to him by the administrator, or by order of court. It is suggested that the act was in the nature of an admission that he did not claim the note, or did not feel certain of his right in the matter. We can see no reason for looking on his conduct in this respect as an impeachment of his defense in this case. That he was not forward or over eager to insist upon his right is much less suspicious than if he had gone to the other extreme. He was named as executor of Morris' will, but refused to serve; and the fact that he did so, and was willing to have his claim pass the scrutiny of the administrator and the court, was to his credit, rather than otherwise. Upon the admitted facts, the defense to the note was well established, and defendant should have had judgment for costs.

There was a counterclaim pleaded, which the trial court dismissed, on the theory that defendant should first establish it as a claim against the estate. As it was conceded that the claim had been filed and was then pending in court, the order of the court in dismissing it from this case could work the defendant no substantial prejudice, and the ruling, even if wrong, was not reversible error.

For reasons stated, the judgment of the district court will be reversed, and the cause remanded for further proceedings in harmony with this opinion.—*Reversed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.